Nathan T. OLPIN, Petitioner–
Appellant,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.**

No. 00–9003.

United States Court of Appeals,
Tenth Circuit.

Jan. 25, 2001.

W. Kevin Jackson of Jensen, Duffin, Carman, Dibb & Jackson, Salt Lake City, Utah, for Petitioner–Appellant.

Randolph Hutter, Ann B. Durney, and Karen D. Utiger, U.S. Department of Justice, Tax Division–Appellate Division, Washington, DC, for Respondent–Appellee.

Before BALDOCK, ANDERSON, and HENRY, Circuit Judges.

BALDOCK, Circuit Judge.

Nathan T. Olpin appeals from a United States Tax Court order granting summary judgment in favor of the Commissioner of the Internal Revenue and denying his motion for summary judgment. Our jurisdiction arises under 26 U.S.C. § 7482(a)(1) and we reverse.[1]

We review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." § 7482(a)(1). Here, the relevant facts are undisputed and we review the Tax Court's grant and denial of summary judgment *de novo*. *Tele–Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir.1997). The fundamental legal question we answer is whether, by refusing to allow Mr. Olpin to sign his otherwise valid and processed tax return after he was notified of his inadvertent omission, the Commissioner waived the assertion that, for lack of a signature, no valid return had been filed.

I. Background facts and proceedings

The following facts are taken from unchallenged affidavits filed by Mr. Olpin, judicial admissions, and/or undisputed documentary evidence submitted with the parties' summary judgment motions and/or responses. Mr. Olpin and his former wife (hereafter referred to as Mrs. Olpin) were legally married throughout 1995 and were divorced in September 1996 after fifteen years of marriage. During their marriage, they had always filed joint federal and state tax returns; they are not tax protesters. In 1996 the Olpins jointly applied for and individually signed under oath two extensions of time in which to file their joint 1995 federal tax returns. Both of the Olpins submitted income information to their professional tax preparer, who prepared their 1995 joint return. The Olpins failed to sign the return before it was filed in October, 1996. Mr. Olpin testified that their failure to sign was inadvertent, and both of the Olpins testified that their intention in 1996 was to file a valid joint federal income tax return. The Olpins filed joint state tax returns.

The Internal Revenue Service (IRS) processed the return in November 1996 and issued tax account transcripts for the 1995 tax year noting the October receipt of the unsigned joint return. The return showed that the Olpins owed $3,795.00. According to the IRS, Mr. Olpin included a $50 tax payment with the unsigned return in October 1996 and then made a series of payments totaling $4,510.93, including penalties and interest, from February 1997 through October 1997. R. Doc. 17, at 2.

After their divorce, Mrs. Olpin declared bankruptcy in February 1997. In March 1997 the IRS filed its first proof of claim in the amount of $2,500 against her estate for the 1995 unpaid taxes. In September 1997 it amended the amount due for 1995 to $5,012 (despite the fact that Mr. Olpin had been making payments from February through September 1997). During this time period, while reviewing the Olpins' returns for 1992–1995 and Mrs. Olpin's return for 1996, the IRS informed Mrs. Olpin during her bankruptcy deposition that she and Mr. Olpin had failed to sign their 1995 return. Mrs. Olpin testified that the IRS also informed her that its claim for deficiency was based in part on Mr. Olpin's allegedly unreported income for 1995.[2] Mrs. Olpin testified that, because she had not seen the 1995 joint return and had no independent knowledge

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a)(2); 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.

**2.** The deficiency notice prepared in May 1999, however, alleged no discrepancies between Mr. Olpin's reported income and his actual income. The deficiency notice was based entirely on differences in income, exemptions, and standard deductions resulting from the IRS figuring Mr. Olpin's tax on his separate income and using the figures applicable to individuals who are married but file separate tax returns. *See* R. Doc. 7, Ex. A at 5.

of Mr. Olpin's income for 1995, "at the suggestion of the Internal Revenue Service, [she] signed and filed a separate federal individual tax return for the tax year 1995." R. Doc. 9, at 2.

Mrs. Olpin informed Mr. Olpin of the unsigned joint return and of her understanding that the IRS would object to confirmation of her bankruptcy petition unless she filed a separate return for 1995. Over Mr. Olpin's objection that she could not file another return because they had already filed, and the IRS had processed, their joint return (for which the record reflects that the entire tax liability had been satisfied by October 1997), Mrs. Olpin filed her separate return on February 9, 1998. The IRS amended its bankruptcy proof of claim to state that she owed no back taxes for the 1995 tax year on the same day. *See id.* Doc. 17, at 2; *id.* Doc. 19, Ex. I. Significantly, the IRS based its February 1998 proof of claim on the November 1996 assessment date of the original joint return and not on an assessment date of her separate return. *See id.* The Commissioner did not submit affidavits controverting either Mrs. Olpin's testimony that she filed the separate return in 1998 only at the suggestion of the IRS or Mr. Olpin's testimony that the IRS refused to confirm Mrs. Olpin's bankruptcy if she did not file the separate return.

In August 1998 the IRS told Mr. Olpin that he had not filed a valid 1995 return because of the lack of signatures. R. Doc. 7, Ex. E. The Commissioner admits that when Mr. Olpin met with IRS agents on two occasions and asked to sign the original return in order to correct the problem, the agents refused to let him sign it. *Id.* Doc. 17, at 2–3. Although the IRS initially invited Mr. Olpin to submit a "valid joint return," it informed him that he could not "unilaterally file a joint return" that did not include Mrs. Olpin's signature. *Id.* Doc. 7, Ex. E. By this time, however, apparently because she had filed a separate return for tax year 1995 at the IRS's suggestion and had been released from joint tax liability for 1995, Mrs. Olpin refused to sign another joint return with Mr.

Olpin. On September 14, 1998, the IRS reversed its original processing of the Olpins' joint 1995 tax form to state that it was not a valid return for lack of the Olpins' signatures.

In May 1999 the Commissioner issued a notice of deficiency to Mr. Olpin asserting that, for lack of signatures, a valid tax return for 1995 had never been filed. Using the income information supplied by Mr. Olpin on the original joint tax return and by Mrs. Olpin on her separate return, the deficiency was then based on a refiguring of Mr. Olpin's taxes under a "married filing separately" status. Mr. Olpin challenged the deficiency in the Tax Court.

## II. Discussion

Mr. Olpin filed a motion for summary judgment, arguing that he was entitled to joint filing status in 1995, and that, but for the IRS's untimely and unreasonable refusal to allow him to sign the original return, the original 1995 joint return would have been valid. The Commissioner filed a cross-motion for summary judgment, focusing on the general requirement that, to be valid, a return must be signed.

■ Mr. Olpin argues, and the Commissioner does not suggest otherwise, that the IRS's usual practice when it receives an unsigned return that is valid in all other respects is to either return it to the taxpayer for signature and resubmission or to send a letter stating that the taxpayer's signature is needed and requesting that the taxpayer sign a "jurat" under penalty of perjury that will become a permanent part of that return. *See, e.g., Dowell v. Comm'r,* 614 F.2d 1263, 1266 (10th Cir. 1980) (noting that IRS did not return unsigned tax forms for taxpayers' signatures, "as was the practice"); *Elliott v. Comm'r,* 113 T.C. 125, 127, 1999 WL 596946 (1999), (noting that IRS immediately returned tax forms to taxpayer for signature or submission of power of attorney); *Pierce v. United States (In re Pierce),* 184 B.R. 338, 341 (Bankr.N.D.Iowa 1995) (stating that IRS sent letter requesting signature on sepa-

rate declaration). He established that the IRS did not send the return back to him either in 1996 when it processed the return or in 1997 when it reviewed the return, and continued to treat it as a valid return by accepting his payments until he had paid the original assessment in full. He showed that the IRS treated it as a valid return in February 1998 when it used the original assessment date as part of its proof of claim in Mrs. Olpin's bankruptcy. He proved that IRS agents twice refused to allow him to sign the original return when he asked to do so. Citing *Dowell*, 614 F.2d at 1266, he argued that, because the IRS had no right to deny him his right to sign the return and had processed and treated the return as valid until September 1998, the Commissioner waived his right to rely on the statutory requirement in declaring the return invalid for lack of a signature. R. Doc. 20, at 4–5, 7; Doc. 19, at 6; Doc. 7, at 5, 12. The Commissioner did not respond to this argument.

Citing *Estate of Campbell v. Comm'r*, 56 T.C. 1, 12, 1971 WL 2558 (1971), for the premise that, if an "income tax is intended by both spouses as a joint return, the absence of the signature of one spouse does not prevent their intention from being realized," Mr. Olpin argued that, if he had been allowed to sign the return as he requested, since it was indisputably his and Mrs. Olpin's intention in 1996 to file a joint return, he fell into the exception to the general rule that a return must be signed by both husband and wife in order to be valid.

The Tax Court did not address Mr. Olpin's waiver argument except to attempt to distinguish *Dowell*, R. Doc. 23, at 8 n. 2, and to state that there is no statutory language *requiring* the Commissioner to waive the signature requirement, *id.* at 10. Although the Tax Court acknowledged that Mr. Olpin correctly stated the *Campbell* exception, it held that the exception did not apply "in the absence of both spouses' signatures on a joint return" and that "[t]axpayers may not circumvent the signature requirement simply by attempt-

ing to elect to file a joint return." *Id.* at 11.

■ We believe the Tax Court missed Mr. Olpin's point about waiver and his assertion that he has never tried to circumvent the signature requirement, but rather, has unsuccessfully sought to sign his return. What is clear to this court is that the Commissioner cannot deny a taxpayer the right to sign his original return and simultaneously declare that the original return is invalid for lack of a signature. Mr. Olpin's right to sign his return arose from his statutory duty to file a signed return. *See* 26 U.S.C. § 6061.

This case is similar to, and is controlled by, our decision in *Dowell*. There, after having filed fraudulent returns for tax years 1963–1966, in 1968 the taxpayers made an honest and genuine effort to satisfy the tax laws by preparing and filing accurate joint returns. 614 F.2d at 1264–65. Unfortunately, as in this case, they failed to sign them. The Commissioner accepted the unsigned joint returns without returning them for signatures and then relied on and used them in the investigation and prosecution of the taxpayers for fraud. *Id.* at 1266. In 1974 the Commissioner issued a deficiency notice for tax years 1963–66, imposing additional taxes plus penalties and interest. *Id.* at 1264. The taxpayers argued that the unsigned returns filed in 1968 triggered the three-year statute of limitations. *Id.* at 1264–65. As here, the Commissioner argued that no valid returns had ever been filed because of the lack of signatures. *Id.* at 1266. We disagreed, holding that the Commissioner's acceptance, failure to return for signature, and use of the unsigned returns constituted acceptance of the returns for all purposes. *Id.* at 1267; *cf. Hydraulic Press Mfg. Co. v. Comm'r*, 27 T.C. 278, 294–95, 1956 WL 572 (1956) (holding that Commissioner waived regulatory requirements he relied upon to bar taxpayer's right to refund by accepting taxpayer's amendments to an original claim).

As discussed above, the Commissioner accepted, processed, audited, and used the Olpins' joint return for at least a year after notifying Mrs. Olpin of the signature omission. It is uncontroverted that, if the tax forms had been returned to Mr. Olpin at any time, he would have signed and resubmitted them. Having denied Mr. Olpin the right to sign his return before Mrs. Olpin filed a separate return at the Commissioner's suggestion, the Commissioner may not now argue that Mr. Olpin "lost" his joint filing status because he did not sign the joint return before the separate return was filed. The Tax Court erred in granting summary judgment in favor of the Commissioner and in denying summary judgment in favor of Mr. Olpin on this issue.

 The Commissioner argues that, even if Mr. Olpin is deemed to have signed the return before the IRS reversed its processing of the joint return, his right in 1995 to a "married filing jointly" tax status is still at issue because there is a genuine issue of material fact regarding *Mrs.* Olpin's intent to file a joint return, as evidenced by her filing of a separate return in 1998. We disagree. Mrs. Olpin's intent to file a joint return is not at issue here—in fact, she is not a party to this case. Mr. Olpin had the burden to show that the deficiency notice is erroneous because the Commissioner used the wrong tax status for him; i.e., that in 1995 he had the right to file a joint return and he intended to file a joint return. "The determination of whether a return should be treated as joint depends upon whether the spouse against whom the joint liability is asserted intended to file a joint return." *United States v. Guy,* 978 F.2d 934, 939–40 (6th Cir.1992). Conversely, when the Commissioner seeks to impose more taxes by asserting individual liability against a married taxpayer, the issue hinges on whether that individual intended to file a separate return. All the evidence in the record conclusively establishes that Mr. Olpin had the right, intended, and honestly attempted to file a joint income tax return for the 1995 tax year. He submitted joint state and federal re-

turns and began making payments on the joint tax liability; no other returns were filed by either him or Mrs. Olpin in 1996; he signed sworn extensions of time in which to file a joint return; and he met all the statutory requirements for filing a joint return. He established, as a matter of law, that a deficiency solely based on a married-filing-separately status was erroneous.

Therefore, we REVERSE the grant of summary judgment in favor of the Commissioner and REMAND with instructions to enter summary judgment in favor of Mr. Olpin.